# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1267 CW 03-1493


**LYNETTE SPURS A/K/A LYNETTE SPURS HAMPTON, ET AL.**

**VERSUS**

**FARMERS INSURANCE EXCHANGE**


************

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CONCORDIA, NO. 38602,
HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**WRIT DENIED.**


J. W. Seibert, III
Attorney at Law
307 Texas Street
Post Office Box 2038
Vidalia, LA  71373
(318) 336-9676
ATTORNEY FOR PLAINTIFFS/APPELLEES:
    Lynette Spurs a/k/a Lynette Spurs Hampton
    Delta Bank f/k/a Louisiana Central Bank

John G. McLure
Attorney at Law
Post Office Box 1525
Alexandria, LA  71309
(318) 445-5317
ATTORNEY FOR DEFENDANT/APPELLANT:
    Farmers Insurance Exchange

PETERS, J.

This matter originally came before us through an application for supervisory writs by the defendant, Farmers Insurance Exchange (Farmers Insurance). Thereafter, Farmers Insurance filed an appeal, and we consolidated the two proceedings. In both proceedings, Farmers Insurance seeks the reversal of a trial court judgment denying its motion for summary judgment and granting a motion for summary judgment filed by the plaintiffs, Lynette Spurs and Delta Bank. For the following reasons, we deny the writ application from the judgment denying Farmers Insurance's motion for summary judgment and concomitantly affirm the summary judgment granted in favor of Ms. Spurs and Delta Bank.

## DISCUSSION OF THE RECORD

Lynette Spurs is the owner of a 1999 Chrysler Concorde automobile. On June 15, 2001, a vehicle driven by Lasheka Jefferson left the highway and struck Ms. Spurs' automobile as it sat in the driveway of her Clayton, Louisiana home, causing extensive damage. Ms. Spurs had previously obtained a policy of liability and collision insurance from Farmers Insurance on her Chrysler Concorde. When she acquired the policy, Ms. Spurs chose to pay the insurance policy premium on a monthly basis pursuant to a Farmers Insurance "EasyPay" plan. Delta Bank was named loss payee in the policy.

When presented with a claim for the damages sustained, Farmers Insurance denied coverage on the basis that the policy had been cancelled prior to the accident. The reason given for the cancellation was Ms. Spurs' failure to timely pay the monthly premium due May 7, 2001, covering the period from May 22, 2001 to June 21, 2001, as well as her failure to additionally pay the monthly renewal premium of $80.82 covering the period from June 22, 2001 to July 21, 2001. Thereafter, Ms. Spurs and

Delta Bank brought this suit to recover for the damages sustained as well as penalties, exemplary damages, and attorney fees.

During the course of the litigation, both sides filed motions for summary judgment addressing the coverage issue. Ms. Spurs and Delta Bank sought a summary judgment declaring that the policy issued by Farmers Insurance provided coverage for the June 15, 2001 accident. Farmers Insurance sought the opposite result in its motion for summary judgment. After a hearing, the trial court granted the plaintiffs' motion and rejected Farmers Insurance's motion. Farmers Insurance's application for supervisory writs and appeal followed the rendition of that judgment.

## OPINION

Louisiana Revised Statutes 22:636.1(D)(1) provides:

> No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.

The Farmers Insurance policy at issue provides in pertinent part in Section A(2)(a)(1):

> **A.** **Cancellation.** This policy may be cancelled during the policy period as follows:
> . . . .
> 2. [The insurer] may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
>    a. At least 10 days notice:
>       (1) If cancellation is for nonpayment of premium . . . .

2

The record establishes that Ms. Spurs failed to timely pay a premium payment due May 7, 2001, and covering the period from May 22, 2001 to June 21, 2001. Farmers Insurance responded to Ms. Spurs' failure to timely pay her premium by mailing her a document entitled "***Notice of Cancellation***" on May 22, 2001, which stated in part:

> We have not received full payment of your premium on the policies listed below. Therefore, your insurance indicated by the policy number(s) listed which has been issued by the undersigned company(ies) will be cancelled effective at . . . 12:01 A.M. . . . ON 06-07-01.

The notice then described the Farmers Insurance policy at issue and listed the amount due as follows:

| | |
|---|---|
| Prior Month Activity Billed Last Month | $86.29 |
| Prior Month Balance Current Month Activity | $86.29 |

Vehicle 158954855
1999 CHRYSLER Premium      6-22 to 7-06    $40.02

| | | |
|---|---|---|
| Renewal Premium | 7-07 to 7-21 | $40.80 |
| Sub Total | | $80.82 |
| Service Charge | | $9.00 |
| Minimum Amount Due | | $176.11 |

The notice appears to require Ms. Spurs to pay not only the past-due premium but also a renewal premium for future coverage in order to avoid cancellation of the policy on June 7, 2001.

Ms. Spurs in fact paid $86.29 by check to Farmers Insurance on May 25, 2001, which payment included an $81.79 premium charge and a $4.50 service charge. This premium payment was to cover the period from May 22, 2001 to June 21, 2001. Farmers Insurance cashed the check on May 30, 2001, and applied the proceeds to Ms.

3

Spurs' policy. The accident involving Ms. Spurs' vehicle occurred on June 15, 2001. Interestingly, not until June 21, 2001, did Farmers Insurance inform Ms. Spurs that it had taken further action on the account, which action consisted of forwarding Ms. Spurs a check in the amount of $31.54 as a refund of the unused premium. It is unclear how Farmers Insurance arrived at this refund figure, but it is clear that Farmers Insurance deemed the policy cancelled at some point after cashing the check.

Without discussing the issues of whether Farmers Insurance issued a proper notice of cancellation, whether Ms. Spurs even received such notice, or whether Farmers Insurance was entitled to require payment of a past-due premium as well as a future renewal premium in order to keep the coverage in effect through the date of the accident, the undisputed evidence reveals that, as a matter of law, Farmers Insurance waived any right it may have had to cancel the policy effective prior to June 21, 2001. Specifically, in *Maddox v. Keen*, 33,072, p. 7 (La.App. 2 Cir. 4/7/00), 756 So.2d 1279, 1284-85 (citation omitted), the second circuit explained the concept of waiver, as distinguished from estoppel,[1] as follows:

> Waiver is generally understood to be the intentional relinquishment of a known right, power or privilege. Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered.

In the instant case, Ms. Spurs forwarded a check for $86.29 to Farmers Insurance on May 25, 2001, to cover the period from May 22, 2001 to June 21, 2001.

---

[1]"In Louisiana, the doctrine of equitable estoppel applies to situations where an insurer's custom of accepting overdue premiums reasonably leads an insured to believe his policy will remain in effect even though he has not paid the premiums when due." *Maddox*, 756 So.2d at 1283. Whether Farmers Insurance should be estopped from denying coverage in the instant case involves genuine issues of material fact not proper for disposition by way of summary judgment.

Despite the untimeliness of the payment, Farmers Insurance nevertheless cashed the check on May 30, 2001, and applied it to Ms. Spurs' policy. Importantly, the accident occurred (1) after Ms. Spurs had made the payment and Farmers' Insurance had cashed the check, (2) during the period for which the payment was applicable, and (3) before Farmers Insurance refunded a portion of the proceeds from the check to Ms. Spurs. At no time prior to the accident did Farmers Insurance give any express written statements of its intent not to waive the June 7, 2001 termination of the policy through its receipt of Ms. Spurs' check. Thus, assuming Farmers Insurance had the right to cancel the policy effective June 7, 2001, its conduct in accepting and cashing the check, applying it to the policy, failing to thereafter expressly waive the June 7, 2001 cancellation of the policy, and refunding only a portion of the proceeds and then only after the accident had occurred demonstrated an actual intention to relinquish that right or at least demonstrated conduct that was so inconsistent with its intent to enforce the right as to induce a reasonable belief that the right had been relinquished.

We note that the court in *Maddox* found no waiver under the facts of that case. However, *Maddox* is distinguishable from the instant case. In *Maddox*, James Keen purchased a six-month automobile insurance policy from Allstate Insurance Company, effective July 7, 1997 through January 7, 1998. Mr. Keen failed to pay his premium for November 1997, and Allstate sent him a cancellation and renewal notice, dated December 18, 1997, which informed Mr. Keen that the policy would be cancelled on January 7, 1998, unless timely payment was made that included an amount for the renewal of the policy. Mr. Keen failed to make a payment before January 7, 1998, and on January 14, 1998, Mr. Keen's vehicle was involved in an accident. On January 19, 1998, Mr. Keen gave Allstate a check for the full amount that Allstate had previously requested in order to avoid cancellation of the policy. Allstate then posted the

5

payment, reinstated the policy with a lapse in coverage from January 7 to January 31, 1998, and credited the policy with an amount in the form of an unearned premium for the period in which the policy had lapsed. The trial court granted a motion for summary judgment finding insurance coverage at the time of the accident, and Allstate appealed.

On appeal, the second circuit in *Maddox* addressed, among other things, whether the receipt of Mr. Keen's check amounted to an implied waiver of Allstate's right to cancel the policy. The court cited La.R.S. 22:636.1(E)(2), which provides: "Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal." The court ultimately concluded that Allstate's receipt of Mr. Keen's check did not amount to an implied waiver. The court noted that before Mr. Keen's delivery of the check following the accident, the policy had already terminated, unlike in the case presently before us. Additionally, unlike in the case presently before us, after the accident and prior to applying Mr. Keen's check to renew the policy, Allstate had forwarded to Mr. Keen express written statements of its intent not to waive the January 7 termination of the policy. Thus, the court held that policy indeed terminated and that Allstate did not waive the termination right.

The *Maddox* court additionally cited our case of *American Surety Co. of New York v. Fowler*, 135 So.2d 663 (La.App. 3 Cir. 1961), in which we held that there was no waiver of the defense of policy cancellation under the facts of that case. In *Fowler*, State Farm had issued an automobile liability policy to Edgar Fowler. However, State Farm sent Mr. Fowler a cancellation notice for nonpayment dated February 19, 1959, terminating the policy effective as of 12:01 A.M. on March 4, 1959. At about 9:00 A.M. on March 4, 1959, Mr. Fowler's vehicle was involved in an accident. Several

hours after the accident, Mr. Fowler gave State Farm a check in an amount sufficient to cover the balance due on the policy. At that time, a State Farm agent issued a receipt upon which he wrote "renewal." Additionally, the back of the receipt contained a printed notice that the payment was effective to renew the policy only as of the time and date of the payment. Also following the accident, State Farm consistently informed Mr. Fowler of its position that the liability policy had been cancelled prior to the accident. Thus, the *Fowler* case is clearly distinguishable from the case presently before us.

## DISPOSITION

For the foregoing reasons, we deny the writ and assess costs to Farmers Insurance Exchange.

**WRIT DENIED.**

7